IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT BOSCH GMBH, | ) | CASE NO.  1: 05 CV 2376 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | |
| HAYNES CORPORATION, et al., | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| Defendants. | ) | |

This patent action is before the Court on Defendant Interstate Diesel Service, Inc.'s Motion for

Summary Judgment of Invalidity due to Violation of the On-Sale Bar and Unenforceability due to

Inequitable Conduct.  (ECF # 100.)

## I. BACKGROUND

On August 18, 2006, Defendant filed the instant Motion for Summary Judgment, asserting that

United States Patent No. 5,155,461 ("the '461 patent") is invalid and unenforceable.  (ECF # 100.)

The '461 patent, entitled "Solenoid Stator Assembly For Electronically Actuated Fuel Injectors And

Method Of Manufacturing Same," is generally directed to a component part in an electronic fuel

injector known as a "stator."  (*Id.* at 2.)  A stator is an electromagnet that is used to open and close a

valve on the injector to regulate the flow of fuel into the engine.  (*Id.*)

Certain claims of the '461 patent cover what Defendant has referred to in this litigation as

Version 2 and Version 3 stators.[1]  Version 2 stators were developed in response to a cracking problem

---

[1] Plaintiff refers to the Version 2 stator as the T-slot-only stator and the Version 3 stator as the Pre-load
solution.  In this Memorandum Opinion and Order, the Court refers to the respective stators as the Version 2 and
Version 3 stators.  The Court does so for ease of reference only, and such reference does not constitute any finding
relating thereto.

that arose with the predecessor stators.  In the Version 2 stators, a T-slot was added to the outside legs in order to solve the cracking problem.  When Version 2 stators likewise demonstrated some cracking problems, further design work led to the creation of what Defendant has referred to as the Version 3 stator.  The primary design change in the Version 3 stator consisted of pre-stressing, or pre-loading the outer legs of the E-shaped core of the stator.

In its Motion, Defendant contends that it is entitled to judgment for two reasons.  First, Defendant alleges that the '461 Patent is invalid under 35 U.S.C. § 102(b).  (*Id.* at 16-29.)  That statute provides that a person shall be entitled to a patent unless, *inter alia*, the invention was "in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States."  35 U.S.C. § 102(b).  Because the '461 patent application was filed on February 8, 1991, the critical date for purposes of determining validity of the patent is February 8, 1990.

Second, Defendant claims that the '461 patent is unenforceable due to inequitable conduct. (ECF # 100 at 24-29.)  More specifically, Defendant contends that Robert Hess, the patent attorney responsible for the '461 patent application, submitted an Information Disclosure Statement ("IDS") to the United States Patent and Trademark Office ("PTO") that contained at least two material misrepresentations.  (*Id.* at 24.)  Defendant alleges:

> *First*, notwithstanding the significant volume of commercial sales of the Version 2 stators, the applicants euphemistically characterized that commercial activity as being "first installed on engines as a production part" and falsely stated that the stators were "considered experimental."  The IDS contained no mention of the word "sale" and gave no indication that over 100,000 units were sold before the critical date.  The sales occurred without any confidentiality restrictions, nor did the inventors retain any control over the parts.  *Second*, the applicants represented that the Version 3 stators "were not put into production or commercial use for experimental or any other purposes for any period of more than one year prior to the date of filing the subject application."  Neither of these representations

were true.

(*Id.* (emphasis in original).)  Hence, Defendant contends that, even if the Court does not find the claims to be invalid based on the on-sale bar, the patent is nonetheless unenforceable based upon this inequitable conduct.  (*Id.*)

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.  The court will view the summary judgment motion in the light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "[t]he mere existence of a scintilla of

-3-

evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252).  Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citations omitted).  In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252.  However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).  FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate.  *Id.*

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible.  The Sixth Circuit has concurred with the Ninth

-4-

Circuit that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'" *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)). FED. R. CIV. P. 56(e) also has certain, more specific requirements:

> [Rule 56(e)] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley*, 20 F.3d at 225-26 (citations omitted). However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id*. at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly

can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.  It is with this standard in mind that the instant Motion must be decided.

### III. DISCUSSION

In resolving the instant Motion, the Court first examines the applicability of the on-sale bar and next turns to the alleged inequitable conduct.

### A. The On-Sale Bar

In order for the on-sale bar to apply, two conditions must be satisfied before the critical date. *See Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55, 67 (1998).  The first condition is that the product must be the subject of a commercial offer for sale.  *See id.*  The second condition is that the invention must be ready for patenting.  *See id.*  The second condition may be satisfied (1) by proof of reduction to practice before the critical date, or (2) by proof that prior to the critical date the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention.  *See id.* at 67-68.  The party alleging invalidity based on an on-sale bar must prove the facts underlying both prongs of this test by clear and convincing evidence.  *See Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1352 (Fed. Cir. 2002).

The experimental use doctrine, however, can negate what otherwise would be subject to an on-sale bar under the statute.  *See Pfaff*, 525 U.S. at 67.  The experimental use doctrine relates to the first prong of the test, and it involves an examination of whether the transaction constituting the sale was incidental to the primary purpose of experimentation.  *See Allen Eng'g Corp.*, 299 F.3d 1353.  Stated differently, the issue is whether the primary purpose at the time of the sale, as determined from an

objective evaluation of the facts surrounding the transaction, was to conduct experimentation.  *See id.*

A number of factors may be considered in assessing experimentation, including:

> (1) the necessity for public testing, (2) the amount of control over the experiment retained by the inventor, (3) the nature of the invention, (4) the length of the test period, (5) whether payment was made, (6) whether there was a secrecy obligation, (7) whether records of the experiment were kept, (8) who conducted the experiment, ... (9) the degree of commercial exploitation during testing[,]...(10) whether the invention reasonably requires evaluations under actual conditions of use, (11) whether testing was systematically performed, (12) whether the inventor continually monitored the invention during testing, and (13) the nature of the contacts made with potential customers.

*Id.* (alterations in original) (*citing EZ Dock v. Schafer Sys., Inc.*, 276 F.3d 1347, 1357 (Fed. Cir. 2002)).  If there is adequate proof that a product "was sold primarily for experimentation," the first prong of the test would not be met, and it is "unnecessary to consider either whether the device was an embodiment of the claimed invention or whether the invention was 'ready for patenting' at the time of the sales."  *See id.*

After a thorough review of the record before it, including the numerous briefs filed by both Plaintiff and Defendant,[2] the exhibits in support thereof, as well as the arguments presented at the hearing on the Motion on October 5, 2006, the Court finds that, even assuming that there were a pre-critical date sale or offer for sale, the Version 2 and Version 3 stators are subject to the experimental use exception to the on-sale bar.  With respect to the Version 2 and Version 3 stators, Plaintiff has set forth adequate evidence that the stators were subject to testing in the field for an extended period of time.  As such, Plaintiff has set forth evidence that any sale of the stators was primarily incidental to

---

[2] In ruling on the instant Motion, the Court has thoroughly considered the Motion itself (ECF # 100), as well as Plaintiff's Memorandum in Opposition (ECF # 131), Defendant's Reply Brief (ECF # 143), Plaintiff's Surreply (ECF # 130), and Defendant's Response to Plaintiff's Surreply (ECF # 137, Ex. A).

testing and experimentation of the design.  It is consistent with logic that such field testing was necessary, given that the design problem that arose with the stators occurred over time.  Because Plaintiff has presented this Court with evidence that the stators at issue were subject to field testing designed to examine the durability of the stators under conditions of actual use, the Court finds that the experimental use exception to the on-sale bar is applicable under the circumstances.

While Defendant attempts to cast doubt on Plaintiff's claims of experimentation with respect to both the Version 2 and the Version 3 stators, its burden in demonstrating invalidity due to the on-sale bar is much higher.  Indeed, Defendant must show, by clear and convincing evidence, that a commercial sale or offer to sell occurred prior to the critical date.  Based on the evidence before it, the Court simply cannot find that Defendant has satisfied its burden.  As such, Defendant's Motion for Summary Judgment based on its claim that the '461 Patent is invalid under 35 U.S.C. § 102(b) is DENIED.

## B. The Alleged Inequitable Conduct

As set forth in Section I of this Memorandum Opinion and Order, Defendant claims that the '461 patent is enforceable because Mr. Hess submitted an IDS containing at least two material misrepresentations to the PTO.  (ECF # 100 at 24.)  More specifically, Defendant alleges that Mr. Hess falsely stated that the sales of Version 2 stators were considered experimental, and falsely represented that the Version 3 stators were not put into production or commercial use for any period of more than one year prior to the date of filing the application.  (*Id*.)  According to Defendant, Robert Straub, a named inventor in the '461 patent, testified about facts that are directly contrary to the statements made by Mr. Hess in the IDS submitted to the PTO.  (*Id.* at 25.)  Based on its position that highly material information was both omitted and misrepresented, and that Mr. Hess and Mr. Straub

-8-

acted with the requisite intent to deceive, Defendant requests that this Court declare the '461 patent unenforceable due to inequitable conduct.  (*Id.* at 26-29.)

There can be no dispute that Patent Rule 56 imposes a duty of candor on those associated with the filing or prosecution of a patent application.  *See* 37 C.F.R. § 1.56.  A breach of that duty of candor, in addition to an intent to deceive the PTO, gives rise to what is known as inequitable conduct. *See Molins PLC v. Textron*, 48 F.3d 1172, 1178-86 (Fed. Cir. 1995).  If proven by clear and convincing evidence, inequitable conduct renders the patent unenforceable.  *See id.*  Based upon this standard, a party seeking to prove inequitable conduct must set forth clear and convincing evidence of (1) information that is material, (2) knowledge chargeable to the patent applicant of such information and its materiality, and (3) the applicant's failure to disclose or misrepresentation of such information as a result of an intent to mislead the PTO.  *See Wesley Jessen Corp. v. Bausch & Lomb, Inc.*, 209 F. Supp. 2d 348, 401 (D. Del. 2002).

As was the case with respect to the invalidity of '461 patent due to the on-sale bar, Defendant simply fails to meet the stringent burden of proving, by clear and convincing evidence, that the patent is unenforceable due to inequitable conduct.  Even assuming for purposes of this Memorandum Opinion and Order that Defendant was able to satisfy the other elements required to prove inequitable conduct, Defendant has provided this Court with no evidence of an intent to deceive the PTO.  Instead, Defendant simply asks this Court to infer intent to deceive based upon its position that the information withheld and misrepresented was highly material.  (ECF # 100 at 29.)  In the face of evidence that both Mr. Hess and Mr. Straub had a good faith belief that the application, including its level of disclosure,

was proper, Defendant fails to satisfy its burden.[3]  Because the '461 patent enjoys a statutory

presumption of validity and enforceability, 35 U.S.C. § 282, this Court will not hold that patent to be

unforceable absent a showing of inequitable conduct by clear and convincing evidence.  Because

Defendant has failed to meet that burden, Defendant's Motion for Summary Judgment based on

inequitable conduct is DENIED.

## IV. CONCLUSION

Based upon the foregoing, Defendant's Motion for Summary Judgment of Invalidity due to

Violation of the On-Sale Bar and Unenforceability due to Inequitable Conduct is DENIED.  (ECF #

100.)

IT IS SO ORDERED.

       /s/Donald C. Nugent
DONALD C. NUGENT
United States District Judge

DATED:    November 29, 2006

---

[3]  Indeed, at the hearing on the instant Motion, Defendant was unable to offer any reasoned explanation as to why information would be withheld or misrepresented under the circumstances.  When the Court questioned Defendant's counsel concerning the topic, the response was only that Defendant had no idea as to why such omission or misrepresentation would be made.